I concur in the result reached by the majority opinion.

**Pedro SAUCEDA, Plaintiff,**

**and**

**Victor Ruscigno; Laurie L. Johnson; Gretchen L. Hite; Joseph Roybal; Albert Rotti; on behalf of themselves and all others similarly situated, Plaintiffs–Appellants,**

**v.**

**DEPARTMENT OF LABOR & INDUSTRIES, OF the STATE OF WASHINGTON, et al., Defendants–Appellees.**

No. 88–4444.

United States Court of Appeals, Ninth Circuit.

Submitted April 10, 1990.*

Decided Oct. 30, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a).

Donald J. Koler, Martin, Koler & Lucas, and Norman W. Cohen, Cohen & Keith–Miller, Seattle, Wash., for plaintiffs-appellants.

Zimmie Caner, Asst. Atty. Gen., Seattle, Wash., for defendants-appellees.

Before WALLACE, HALL and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Various individual plaintiffs appeal the district court's grant of summary judgment to the Washington State Department of Labor and Industries (Department) and named Department officials, contending that the Department's procedures for suspending their employment disability benefits violated their due process rights. We review this question de novo, and we affirm.

## BACKGROUND

As administrator of Washington's Workers' Compensation Act, the Department requires eligible claimants to submit to medical examinations and participate in vocational evaluation programs to verify claimants' injuries and to retrain injured claimants. If a claimant refuses to cooperate with the Department, the Department may suspend his benefits unless he shows good cause for his failure to cooperate. *See* RCW 51.32.110 (1990). When the Department suspends such benefits, it must give notice to the claimant indicating its decision and its reasons for the decision, and inform the claimant of his right to request reconsideration or appeal the decision to the Board of Industrial Insurance Appeals. RCW 51.52.050.

The Department suspended the disability benefits of all six plaintiffs in this case for failure either to submit to medical examinations or to participate in vocational programs. After exhausting their administrative remedies, plaintiffs filed suit in district court alleging that Washington's procedures for suspending disability benefits violated their due process rights. The district court granted summary judgment to the

Department, finding the suspension procedures constitutionally sufficient.

## DISCUSSION

### A. *Jurisdiction over the Parties and the Appeal*

The caption of appellants' notice of appeal specifically named five of the six plaintiffs in district court. The Department has reinstated plaintiffs Johnson, Roybal and Ruscigno's disability benefits, and thus their claims are moot. Although the record does not indicate that plaintiff Rotti's benefits have been reinstated, the Department has voided his suspension order, and thus his claim is probably moot. If only Rotti's claims were involved, we would dismiss the appeal. However, the fifth named plaintiff Hite appealed her suspension order to the Board of Industrial Appeals, and the Board dismissed her claim. Thus, Hite's appeal from the Board's dismissal is not moot and we must consider the merits.

■ Plaintiff Sauceda was omitted from the notice of appeal. This omission would seem to indicate that Sauceda is not a party to this appeal. In *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988), the Supreme Court held that a party omitted from a notice of appeal was not a party to the appeal. There, the caption of the notice named one party and included the phrase "et al." The body of the notice specifically named 15 of the 16 plaintiffs in the case. The Court held that the phrase "et al." failed to provide notice to the courts and the opposition of Torres' intention to appeal. *Id.* at 318, 108 S.Ct. at 2409.

We have recently held that *Torres* does not require that the notice specifically name a party where a generic term in the body, like "plaintiffs" or "defendants," adequately identifies the individuals appeal-ing. *National Center for Immigrants' Rights, Inc. v. INS*, 892 F.2d 814 (9th Cir. 1989) (per curiam). In *Immigrants' Rights* the caption named one defendant and included the term "et al." The body of the notice stated that "defendants" appeal. We held that the use of "defendants" in the body coupled with the phrase "et al." in the caption fairly indicated that all the defendants intended to appeal. *Id.* at 816–17.

Here, like *Immigrants' Rights*, the body of the notice stated that "plaintiffs, and each of them, hereby appeal." However, unlike *Immigrants' Rights* and *Torres*, the caption here specifically named five of the six plaintiffs in the case,[1] but did not include the phrase "et al." In this context, we cannot say that the notice fairly indicates an intention to appeal by parties not specifically named in the caption. We think the more reasonable interpretation is that "plaintiffs" refers only to the five named plaintiffs in the caption. *Cf. Immigrants' Rights*, 892 F.2d at 817 ("[I]f only some defendants desired to appeal, those defendants could have identified themselves individually.") We hold, therefore, that Sauceda is not a party to this appeal.

■ The Department argues that appellants' federal suit is barred by the state's eleventh amendment immunity. To the extent that appellants' suit seeks damages and injunctive relief against a state agency, it is barred by the eleventh amendment. *See Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). The eleventh amendment also bars appellants from seeking retrospective relief such as reinstatement of past benefits from state officials, *see Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974), but it does not bar appellants from seeking prospective injunctive relief against the named Department

---

1. The notice in this case differs from *Torres* in another regard. In *Torres,* the omission of one of sixteen plaintiffs was not apparent from the face of the notice. Here, six names appeared in the caption, but plaintiff Laurie Johnson's name was listed twice. Thus, the typographical error is apparent on the face of the notice. Yet, we discern no defensible way to use this error to help Sauceda here. Although we could inter-pret this error as an intention to name Sauceda where the notice repeats Johnson's name, we could just as easily interpret the error to be simply a printing error where the typist repeated one name twice. Accordingly, we cannot say that the caption "gives [the] fair notice of the specific individual ... seeking to appeal" required by Rule 3(c). *Torres,* 487 U.S. at 318, 108 S.Ct. at 2409.

officials, *see V.O. Motors v. California State Board of Equalization*, 691 F.2d 871, 872 (9th Cir.1982).

### B. *Merits*

Appellants seem to contend that the Department should conduct some type of evidentiary hearing prior to suspending disability benefits. The parties agree that *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), upon which the district court relied, is the correct focal point for our due process analysis. We find that the constitution does not require any additional pre-termination procedures for suspending disability benefits.

First, the private interest here, appellants' desire for uninterrupted disability payments pending final administrative decision on their cases, does not require an evidentiary hearing prior to suspension. While this interest may, in some cases, be significant, disability claimants do not necessarily live on "the very margin of subsistence." *Id.* at 340, 96 S.Ct. at 905. Unlike welfare assistance, disability benefits are not related to financial need. *Id.* And although the six-and-one-half months average time for a claimant's case to be finally settled might strain "the typically modest resources of the family unit of the physically disabled worker[;] ... other forms of government assistance will become available where the termination of disability benefits places a worker or his family below the subsistence level." *Id.* at 342, 96 S.Ct. at 906 (footnote omitted).

Second, an evidentiary hearing will not significantly aid in avoiding erroneous decisions. In deciding whether to suspend benefits, the department normally considers whether the claimant submitted himself for medical examination, or participated in a vocational program, and if not, whether the claimant communicated to the Department good cause for his failure. *See* RCW 51.-32.110. These decisions will generally be reliable because they are made on the basis of objective written documentation. *Cf. Mathews*, 424 U.S. at 343–45, 96 S.Ct. at 907–08 (decision whether claimant is disabled based on objective medical reports is a more sharply focused and easily documented decision than the determination of welfare entitlement). The potential value of an evidentiary hearing prior to termination is, therefore, slight.

Also, safeguards exist to avoid erroneous decisions. A self-insured employer cannot suspend benefits without the Department's approval. RCW 51.32.110. And the Department must inform a claimant of its decision to suspend benefits with its reasons, and give him sixty days to protest or request reconsideration. RCW 51.52.050.

Finally, the public's interest to see that disability benefits are paid only to claimants who are disabled outweighs the need for additional pre-termination procedures. The Department requires claimants to submit to medical examinations and participate in vocational rehabilitation programs to confirm those claimants' disabilities and to retrain the claimants if possible. Once a claimant refuses to submit to medical examination or obstructs vocational evaluation, the public's interest is threatened if payments are not stopped within a reasonable time because it is expensive and time consuming to recoup benefits erroneously paid. *See Mathews*, 424 U.S. at 347, 96 S.Ct. at 908.

We hold, therefore, that Washington's procedures for suspending disability benefits are constitutionally sufficient. The judgment of the district court is AFFIRMED. Both appellants' and appellees' requests for attorney's fees are denied.

AFFIRMED.