**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SHARON MULLER and JEFF
MULLER,

    Plaintiffs-Appellants,

v.

JACKSON HOLE MOUNTAIN
RESORT CORPORATION,

    Defendant-Appellee.

STATE OF WYOMING,

    Intervenor.

No. 03-8072

(D.C. No. 01-CV-168-D)

(D. Wyoming)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE,** and **HARTZ**, Circuit Judges, and **HERRERA**, District Judge[**]

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore,

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R.
32.1 (eff. Jan. 1, 2007).

[**] The Honorable Judith C. Herrera, United States District Judge for the District of
New Mexico, sitting by designation.

ordered submitted without oral argument.

Plaintiffs Sharon Muller and Jeff Muller appeal from the judgment entered in favor of defendant Jackson Hole Mountain Resort Corporation ("the Resort") on the Mullers' negligence claim. After a three-day trial before a magistrate judge, a jury determined that the injuries that Sharon suffered while attempting to board a gondola were an inherent risk of skiing under the Wyoming Recreational Safety Act ("RSA"). Therefore, the RSA precluded any recovery for the Mullers under their negligence claim.

On appeal, the Mullers challenge that judgment, asserting that the RSA is unconstitutional, that the RSA does not apply to this case, that Sharon's injuries did not result from an inherent risk of skiing, and that the Resort is a common carrier under the Wyoming Constitution. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

The Mullers, a married couple from Hawaii, traveled to the Resort for a skiing vacation. Aplt. App. at 59. On February 3, 2001, Sharon attempted to board a gondola at the Resort to ride to the top of a hill. Id. at 32. Sharon alleges that her foot became caught in a space between the lift and a bunched up mat. Id. at 79. The gondola pulled her forward for approximately fifteen feet until she managed to escape. Id. at 72. As a result, she suffered permanent injuries to her leg. Id. at 67, 83.

Contending that the Resort's negligent operation of the gondola led to Sharon's injuries, the Mullers sued the ski resort in federal court under diversity jurisdiction. Issues now raised on appeal involve the RSA, which provides:

(a) *Any person who takes part in any sport or recreational opportunity assumes the inherent risks in that sport or recreational opportunity*, whether those risks are known or unknown, and is legally responsible for any and all damage, injury or death to himself or other persons or property that results from the inherent risks in that sport or recreational opportunity.

(b) A provider of any sport or recreational opportunity is not required to eliminate, alter or control the inherent risks within the particular sport or recreational opportunity.

(c) Actions based upon negligence of the provider wherein the damage, injury or death is not the result of an inherent risk of the sport or recreational opportunity shall be preserved pursuant to W.S. 1-1-109.

WYO. STAT. ANN. § 1-1-123(a), (b), (c) (emphasis added). The Act defines "inherent risk" as "those dangers or conditions which are characteristic of, intrinsic to, or an integral part of any sport or recreational opportunity." Id. § 1-1-122(a)(i). The RSA's exclusion clause preserves the right to sue on "a cause of action based upon the design or manufacture of sport or recreational equipment or products or safety equipment used incidental to or required by the sport or recreational opportunity." Id. § 1-1-122(a)(ii).

At trial, the magistrate judge ruled that § 1-1-123's inherent risk standard applied, because the facts of the case did not trigger the RSA's exclusion clause. Aplt. App. at 45-47. As a consequence, the court instructed the jury that the Resort would not be liable if Muller's injury "resulted from an inherent risk of the recreational opportunity in which she was taking part." Id. at 42, 45-47. The court also denied the Mullers' motion to include a jury instruction that the Resort is a common carrier under Section 7 of Article 10 to the Wyoming Constitution, which would have subjected the Resort to a higher standard of care. Id. at 53-54.

-3-

The jury ultimately found for the Resort, concluding that Sharon's injuries resulted from an inherent risk of a recreational opportunity under the RSA. After the magistrate judge entered judgment in favor of the Resort, the Mullers filed this appeal. Initially, the Mullers raised four issues: (1) whether the RSA is unconstitutional, because it violates equal protection principles and is void for vagueness; (2) whether the RSA's exclusion clause bars application of the RSA's inherent risk standard to this case; (3) whether an injury from loading onto a gondola is an inherent risk of alpine skiing; and (4) whether the court improperly failed to instruct on the Resort's status as a common carrier under the Wyoming Constitution. Aplt. Opening Br. at 1-2.

II.

We begin by identifying those issues that have been addressed by the Wyoming Supreme Court as a result of our certifying questions to that court. Pursuant to 10th Cir. R. 27.1 and Wyo. R. App. P. 11.01, this court certified the second, third, and fourth issues identified above to the Wyoming Supreme Court. On August 11, 2006, the Wyoming Supreme Court issued an opinion answering our certified questions. Based on those answers, we conclude the magistrate judge correctly instructed the jury on inherent risk because the exclusion clause does not apply to "a ski lift operated by a recreational provider." Muller v. Jackson Hole Mountain Resort, 139 P.3d 1162, 1166 (Wyo. 2006). Also, we conclude the inherent risks of alpine skiing include injuries that occur "while boarding a ski lift." Id. at 1168. These conclusions render the common carrier issue moot. Id. at 1164. In supplemental briefing, the Mullers did not contend that the

Wyoming Supreme Court's answers failed to dispose of the second, third, and fourth issues, characterizing the first issue as the "remaining issue" before us.  See Aplt. Supp. Br. at 1.

III.

The sole issue remaining in this case is whether the RSA is unconstitutional.  The Mullers argue that the RSA violates their right to equal protection, because the RSA benefits one class (recreational providers) at the expense of another class (those injured while taking part in recreational activities).  Aplt. Opening Br. at 14-15.  The Mullers also assert that the RSA is unconstitutionally vague, because the phrase "inherent risk" is too ambiguous to give notice to skiers that their injuries on the slopes may not be compensable.  Id. at 16.  Although the Mullers fail to make clear whether they are contending that the RSA runs afoul of state or federal constitutional guarantees, we conclude that the Mullers' argument focuses on the Wyoming Constitution because the authorities the Mullers cite in support of their constitutional arguments are, for the most part, Wyoming state cases.[1]

---

[1] The only exceptions include a Montana case dealing with a similar statute in that state and a case from the District of Wyoming, Westbrook v. Teton County Sch. Dist. No. 1, 918 F. Supp. 1475 (D. Wyo. 1996).  The Mullers appear to cite to Westbrook to establish the general proposition that due process requires prohibitions to be clearly defined.  The Mullers also cite to Walters v. Grand Teton Crest Outfitters, Inc., 804 F. Supp. 1442 (D. Wyo. 1992), as an example of a court trying to apply the RSA's inherent risk standard.  Finally, the Mullers highlight Clajon Prod. Corp. v. Petera, 70 F.3d 1566 (10th Cir. 1995) for the general proposition that courts may address the constitutionality of statutes even when those statutes involve a legislature's public policy judgments. Viewed individually or as a whole, these citations do not cause us to conclude that the Mullers have alleged a federal constitutional claim.

Before reaching the merits of the Mullers' arguments, we must ascertain whether these constitutional issues are properly before us. Generally, we will only consider arguments on appeal that the parties have first raised before the district court. In re Walker, 959 F.2d 894, 896 (10th Cir. 1992). The State of Wyoming, an intervenor in this case, contends that the Mullers never raised their equal protection or vagueness arguments prior to their assertion of these arguments on appeal. Intervenor Br. at 19-20. After reviewing the record, we agree that the Mullers did not preserve these arguments by raising them below.

The Mullers contend that they raised "the issue of the [RSA's] constitutionality" before the magistrate judge and that the magistrate judge ruled that the RSA was constitutional, thus preserving their equal protection and vagueness arguments for our review on appeal. Aplt. Reply Br. at 2. The magistrate judge's constitutional analysis, however, was limited to whether he should instruct the jury that the Resort was a common carrier under the Wyoming state constitution, thereby entitling the Mullers to a higher standard of care. The magistrate judge refused to give the instruction after concluding that the common carrier issue had been raised too late in the proceedings and because operators of ski gondolas are not common carriers. Aplt. App. at 34-35, 53-54. While the Mullers are correct that their common carrier arguments placed the RSA's constitutionality at issue, those arguments questioned the RSA's constitutionality only with regard to the common carrier provision.

Our waiver rule is not "absolute," because we may still consider, in our discretion,

an argument not raised below when it presents "'a strictly legal question, the proper resolution of which is beyond doubt or when manifest injustice would otherwise result.'" Sussman v. Patterson, 108 F.3d 1206, 1210 (10th Cir. 1997) (quoting Daigle v. Shell Oil Co., 972 F.2d 1527, 1539 (10th Cir. 1992)).  While the Mullers' constitutional issues present strictly legal questions, we cannot conclude that the proper resolution of these issues is beyond doubt or that a manifest injustice would result if we do not now consider these issues.  Although the Mullers were aware that the RSA could implicate the Wyoming Constitution, as evidenced by their arguments regarding the common carrier provision, they did not pursue the equal protection and due process challenges now alleged.  We decline the invitation to address these equal protection and other due process issues which are raised for the first time on appeal.

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge